The State *v.* Rollins.

## THE STATE *v.* ROLLINS.

Chapter 176, § 22, Rev. Stat., prescribes the form of oath to be administered to petit jurors in criminal trials, and imperatively requires its administration, and any other form of oath is insufficient.

Accordingly, where, in such a case, an oath in the form prescribed in civil trials was administered, upon exception taken by the respondent, the verdict returned was set aside, and a new trial granted.

APPEAL from the judgment of a Justice of the Peace, founded upon a complaint dated June 27th, 1850, alleging that " the respondent, on the 21st day of May, 1850, at &c., within the county, &c., with others unknown, did then and there make a great brawl and tumult, contrary, &c., against, &c."

The respondent was tried before the Justice, July 6th, 1850, upon the plea of " not guilty."

The respondent, in the Court of Common Pleas, moved to quash the appeal, on the ground that no offence is described in the complaint. He also moved that the appeal might be dismissed, because the complaint was not prosecuted by the public prosecuting officer. Both these motions were overruled.

Upon the trial, a large number of witnesses were examined on both sides. The evidence for the prosecution tended to prove, that on the day of the annual training in May, the militia company in Rollinsford, agreeably to orders, met for the purpose of inspection, near the house of O. Yeaton, about one mile from the village of Salmon Falls; that a party of twelve or fifteen young men, of whom the respondent was one, made their appearance near Yeaton's house, chiefly mounted on horseback, though one was mounted upon a worn-out chaise carriage, and two others upon a long wagon, all dressed in a ridiculous and fantastic manner, and some of them painted and disguised. Just before the company was called to order, this company rode up past them, and presently returned, passing and repassing two or three times, in the travelling part of the public highway, near which the company was paraded, and afterward riding in a circle upon an open piece of ground in front of the company, which extended from the road where they were standing, eight or ten rods to the railroad, and performing other manœuvres, for about three quarters of an hour. During the whole of this time, as the evidence for the prosecution tended to show, this party was very noisy, shouting, and making loud and vulgar talk, as the prosecutor contended, for the purpose of embarrassing and disturbing the company in the performance of their military duties; and the officers of the company, in consequence of their conduct, had great difficulty in calling the roll, and preserving order in the company; the respondent, particularly, making an insulting speech to the company relative to the captain, and using threatening words to another person present.

On the part of the respondent, the evidence tended to show,

that the party on horseback were entirely civil and quiet, making no noise, offering no insults, and making no disturbance.

The respondent offered to prove, that the complainant, Stackpole, who was shown to be out of the State, had said, since the making of said complaint, that the respondent and his associates behaved well, and in no way disturbed him or his company, he being the captain of said company, but the Court rejected the evidence.

The Court charged the jury, that a brawl or tumult, as used in the statute, was an angry debate, a quarrel carried on with loud talk and noise, or such loud talk and noise, directed by one party toward another, as was calculated to provoke an angry debate and quarrel.

The Court instructed the jury, that if, upon the evidence, they entertained any reasonable doubt of the guilt of the respondent, any such doubt as would lead a reasonable man not to believe in the guilt of the respondent, they were bound to acquit him; but if the evidence reasonably satisfied them that the accused was guilty, they were bound to convict him.

To these rulings and instructions the respondent excepted.

The jury found a verdict of guilty.

The respondent moved for a new trial, for the exceptions above stated, and also because, as he alleged, nothing was proved, that in law amounted to a brawl or tumult, and because the jury were not sworn as in criminal cases.

He also moved in arrest of judgment.


*Christie* and *Kingman*, for the defendants. ‑ The complaint alleges, simply, that the respondent " at Rollinsford in said county," did make a great brawl and tumult, &c.

1. Our objection is, that no offence, under the 1st section of chap. 113, Rev. Stat., is here described.

The acts should be committed in some "*public place*," and should be so alleged in the complaint, in order to a violation of the statute. The evil intended to be remedied, is the disturbance of the public; and such an allegation is uniformly inserted

in all the precedents. Bell's Justice, (2d ed.) 353; Davis's Justice, 334; Russell on Crimes, 302 – 305.

2. If the public prosecuting officer did not think it necessary or proper to take up the time of the Court, or charge the county with this prosecution, it should have been dismissed. The criminal jurisdiction of the Court of Common Pleas is not thrown open to every one who chooses to push a criminal suit at his own risk; nor should any person be put to the trouble and expense of defending himself there, at the mere motion of a complainant, without the sanction and approval of the Solicitor. And by the 5th section of chap. 13, Rev. Stat., it is expressly enacted, that "*it shall be* the duty of the Solicitor of each county to take charge *of all suits and prosecutions* in the name of the State, pending in the Court of Common Pleas of such county." This we understand to be a negative provision, forbidding complainants to manage any " suits or prosecutions" in that Court; and is for a protection, at once, of the county, the Court, and the accused.

3. The Court erred in giving the same definition to both the words, " brawl" and " tumult;" and in making that a crime, which was but the provocation to commit an act which would be a crime when committed.

The best lexicographers define " brawl," as " *a noisy quarrel ;* " and " tumult," as " *a violent commotion in a multitude ;* " and the common acceptation and use of these words are in accordance with those definitions. We submit, therefore, that nothing was proved which amounts to " a brawl or tumult," and that the Court should so have instructed the jury.

4. The Court charged the jury that " if they entertained any such doubt of the guilt of the respondent, as would lead a reasonable man *not to believe* him guilty, they were bound to acquit." Is not this language precisely equivalent to saying, " any such doubt as would lead a reasonable man to believe him not guilty ? " If so, it is clearly wrong. It is well established law, that in case of doubt, the jury are to acquit. McNally on Evidence, 3, 578; *Hitchcock* v. *Manger*, 15 N. H. Rep. 105.

The Court also charged on this point, " that if the evidence *reasonably* satisfied them of his guilt, they were bound to con-

vict." The definitions of the word " reasonably," are, " *moderately*," "*in a moderate degree*," "*not-fully*," "*in a degree reaching to mediocrity*." See Webster's and Walker's Dictionaries.

The amount or degree of satisfaction required by this instruction, is much less than would be understood by the word " *satisfied*," standing alone. It means "moderately satisfied," " not fully satisfied ; " which is a wide departure from the usual charge in criminal cases.

5. The jury were not sworn, except into office. The statute prescribes the form of oath which *shall be* administered to the jury in criminal cases. Rev. Stat. chap. 177, § 22 ; and we suppose that any other oath than the one prescribed, is no better than none ; and a trial which is not in accordance with the statute in every respect, is no trial.

6. The respondent also moves in arrest of judgment, because the complaint contains two distinct offences in the same count. *State* v. *Nelson*, 8 N. H. Rep. 163 ; *Commonwealth* v. *Symonds*, 2 Mass. 164.

The statute uses the terms " brawls *or* tumults " disjunctively ; not certainly as defining or explaining each other, but with reference to different and distinct offences. There is no common definition of the two terms ; no one act can amount to both offences ; nor will either term describe the acts which make up an offence under the other.

*J. S. Woodman*, for the State.

Woods, J. The only question proposed to be considered, is that arising upon the exception taken to the form of the oath administered to the jurors who returned the verdict in this case. The objection is, that the oath administered, was not the oath required by the statute to be administered in criminal cases. The statute provides, that the " petit jurors' oath in criminal cases," shall be in the following form, namely : " You solemnly swear, that you will well and truly try, and true deliverance make, between the State of New Hampshire and the prisoner at

the bar, whom you shall have in charge, according to law and the evidence given you. So help you God." The terms of the oath are prescribed, clear and exact. The statute could hardly be more explicit or imperative in its requirements as to the form of the oath of the juror in such cases. From the arguments of the counsel at the bar, we infer that the oath administered to the jurors was that prescribed in the trial of civil actions. That oath requires jurors, " in all causes betwixt party and party," that shall be committed to them, to " give a true verdict according to law and the evidence given " them. The oath that was administered, differs in its terms from that which is prescribed, and is inapplicable and inappropriate in a criminal trial.

It is a sufficient objection to the oath, that the statute has prescribed an exact form of oath to be administered in criminal trials to jurors, and that it was not administered in this case. The oath administered was not in conformity with the statute, nor had it the sanction of usage. As well might the trial and conviction have been had without the adminstration of an oath in any form. The respondent had a right of trial according to the rules of law fairly interpreted, and in the form and manner prescribed. The terms of the statute prescribing the form of the oath are not open to any doubt, and no other form is admissible in its stead. The form of the oath is made by statute, of the substance of the trial, and cannot be dispensed with. The terms of the jurors' oath are not to be regarded as a mere formality, but as operating as a substantial guide in their proceedings. And where, as in the present case, the Legislature has prescribed the form of oath to be administered, it is not within the province of the Court to allow another form to be substituted in its stead, either upon the ground that it is a mere formal proceeding, or that the substituted oath is, in its terms, equivalent to the prescribed form, and is of equally binding and obligatory force upon the minds and consciences of jurors.

If the prescribed form may be properly dispensed with in one case, so it may with equal propriety in every and all cases, and in that way the statutory provisions may be wholly defeated and

45 *

disregarded. Such a departure from the prescribed mode of proceeding in criminal trials cannot be tolerated consistently with the maintenance of the just rights of persons accused of crimes. Persons are properly convicted and punished for crimes, only when their guilt has been determined in accordance with the prescribed forms of trial, and the established rules of law.

Upon the whole, we think it entirely clear, that, for the reasons stated, the verdict must be set aside, and a

*New trial granted.*